[Cite as *State v. Curry*, 2023-Ohio-1571.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 111948 |
| v. | : | |
| TYCHON CURRY, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** May 11, 2023

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-20-655371-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Andrew F. Rogalski, Assistant Prosecuting Attorney, *for appellee.*

Bennett Legal, LLC, and Mark S. Bennett, *for appellant.*

ANITA LASTER MAYS, A.J.:

{¶ 1} Defendant-appellant Tychon Curry ("Curry") filed an appeal asking this court to vacate his sentence and remand the matter to the trial court for resentencing. Curry argues that (1) the record does not support the findings that

consecutive sentences were appropriate; and (2) the Reagan Tokes Law sentencing scheme under S.B. 201 is unconstitutional. We affirm.

## I.    Background and Facts

{¶ 2}    On January 5, 2021, Curry was indicted for aggravated murder, R.C. 2903.01(A), murder, R.C. 2903.02(B), and felonious assault, R.C. 2903.11(A)(1). Each count carried one- and three-year firearm specifications under R.C. 2941.141(A) and 2941.145(A) and a weapons forfeiture specification under R.C. 2941.1417(A).

{¶ 3}    The case was reassigned to the mental health docket and set for trial. At the January 4, 2022 final pretrial, the terms of a plea offer were placed on the record and explained to Curry who stated he understood. The proceedings were adjourned to allow Curry to speak with counsel.

{¶ 4}    On March 14, 2022, the parties appeared for trial. A revised plea offer was discussed and placed on the record. The state advised:

> After further discussions with defense counsel this morning, the State of Ohio, with the permission of my supervisor, did provide a second offer to the defendant that was communicated just prior to going on the record today as follows:
>
> The prior mark had been essentially murder with a one-year firearm specification and Count 4, having weapons under disability, so that the Court would be starting at life in prison with parole eligibility beginning in 16 years based upon Count 1.
>
> Under the revised plea offer made this morning, the State of Ohio would amend Count 1, murder, to a felony of the first degree involuntary manslaughter, which I believe is 2903.04(A) of the Revised Code, and that would include a three-year firearm specification.

There would also be a plea of guilty to Count 3, felonious assault, without the firearm specifications, and Count 4, having weapons under disability, without the firearm specifications but with the forfeiture of the weapon.

So that — and there would be a jointly recommended sentencing agreement between the State of Ohio and the defense of 18 years based upon those plea counts.

That was the offer that was communicated within the last half hour to the defense counsel, and I do believe they have had an opportunity to discuss that with Mr. Curry.

So it's — the one offer was life in prison, parole eligibility beginning at 16 years. The second offer is no life in prison, 18 years flat, with Reagan Tokes Law.

(Tr. 22-23.)[1]

{¶ 5} The court asked how the parties reached an agreed 18 years where the counts could potentially merge. The state responded that the parties could agree to no merger. The court inquired whether the revised plea would be for 18 years and whether the court had any discretion. The state responded:

It would be jointly recommended by both parties to the Court. So the Court can sentence — follow our recommendation or not. That's how I always interpret that agreement between the parties, is we both recommend 18; the Court can decide to accept it or to sentence otherwise.

(Tr. 24.)

{¶ 6} Defense counsel agreed with the interpretation but advised that Curry would accept an agreed recommended sentence of 16 years. The parties compromised on 17 years. The state explained:

---

[1] The having a weapon while under disability charge stemmed from an Ashtabula County arrest warrant.

That is correct, your Honor. And to accomplish this plea, the State would then also dismiss Count 3 in its entirety. So that we would have Count 1 amended, involuntary manslaughter, with the three-year firearm specification, and then Count 4 as amended, weapons under disability, without any firearm specifications, which will enable the Court, if it's so inclined, to sentence Mr. Curry to the 17 years that will be jointly recommended at the sentencing hearing by both the state of Ohio and the defense. That's my understanding.

(Tr. 25-26.) The trial court fully explained the application of indefinite sentencing under the Reagan Tokes Law during the plea colloquy and provided an example of its impact based on the jointly recommended sentence. Curry pleaded guilty, counsel agreed that the trial court complied with Crim.R. 11, and that Curry's plea was knowingly, intelligently, and voluntarily made.

{¶ 7} Sentencing was conducted the next day on March 15, 2022. The state alleged that in December 2020, Curry resided with his long-time friend David Young ("Young") in Young's one-bedroom apartment in Garfield Heights. Young's brother and another individual also resided there. The day of the shooting, Young and Curry's younger brother returned from running errands. Young, who occupied the bedroom, discovered what appeared to be sputum or phlegm on his pillow. Curry's younger brother was in the bathroom when he heard shots and emerged to see Curry standing over Young hitting him with a gun.

{¶ 8} Curry's younger brother left the apartment and called 911. Police arrived to find Curry and Young with blood on their clothing and a .45 caliber gun also with blood on it. Young appeared to be deceased. The state said Curry

"numerous times sort of confessed that he was the one that did it claiming that [Young] was coming at him and attacking him in his sleep." (Tr. 42.)

{¶ 9} The state also said that while Curry's family was somewhat satisfied with the plea, Young's family wanted the case to go to trial and that Young's sister planned to address the court. Defense counsel objected that Marsy's Law does not provide a right for a victim to ask the trial court to vacate a plea.[2] Young's sister stated that Curry's younger brother had recently been located and was on the way to Cleveland to testify, but the state had advised her that it was too late to move forward with trial. The sister also recited a troubling history of behavior by Curry toward Young but said that Young repeatedly forgave Curry.

{¶ 10} The trial court addressed the defense objection to the statement. "The court * * * does note that Marsy's Law does not give the victim or the representative the right to ask the Court to withdraw the plea, so the court will not address that issue." (Tr. 52.)

{¶ 11} The trial court announced:

This court has considered all of the information that's been presented today. I've reviewed the purposes and principles of sentencing pursuant to Revised Code 2929.11, the seriousness and recidivism factors relevant to these offenses and yourself pursuant to Revised

---

[2] Article I, Section 10a of the Ohio Constitution ("Marsy's Law") became effective on February 5, 2018, and expands the rights afforded to victims of crime. *State v. Hughes*, 2019-Ohio-1000, 134 N.E.3d 710, ¶ 13 (8th Dist.). Effective April 6, 2023, House Bill 343 was designed to provide "guidance to those in the criminal justice system on how those rights are to be protected." Ohio Judicial Conference Enactment News, *House Bill 343 Marsy's Law Implementation*, pg. 1. Neither the original Marsy's Law nor House Bill 343 declares that a victim is a party to a criminal action. *Hughes* at ¶ 14; *id.* at p. 3.

Code 2929.12, and the need for deterrence, incapacitation, rehabilitation and restitution.

This Court will adopt the agreed sentence placed onto the record yesterday. Count 1, the involuntary manslaughter, this Court will sentence you, Mr. Curry, to three years on the firearm specification, which will be served prior to and consecutive with the indefinite sentence of 11 to 16 and a half years in prison.

On Count 4, I will sentence you to three years in prison.

I make the further finding that consecutive sentences are warranted in the present case, and I'm ordering Mr. Curry to serve the sentences on Counts 1 and 4 consecutively.

After reviewing the record and the evidence, I find that consecutive sentences are necessary to punish, to protect the public from future crime, and are not disproportionate to the conduct or danger posed here by the defendant, and that these offenses are part of a course of conduct, and that the harm caused for the loss of life is so great that a single prison term would not adequately reflect the seriousness of the conduct.

This equals a total prison sentence of 17 years. It does not include the indefinite sentencing time that's attached to Count 1.

It is presumed, Mr. Curry, that you'll be released when you finish your minimum term for Count 1 unless the Ohio Department of Rehabilitation and Corrections determines that you must remain in prison for bad conduct; and that this decision is made by the Ohio Department of Rehabilitation and Corrections.

If you are not released when your minimum term ends, you will serve an additional specified period of time and be given a new release date.

You will be released on that date unless you are, again, denied release for bad conduct. This process will repeat until you are either released or until you finish your maximum term.

I want to remind you that once you finish your mandatory portion of that three-year specification, you would then be eligible to earn good time credit. I have the right to deny your good time credit, but before that would happen, I would assign counsel for you. We would have a hearing.

(Tr. 53-56.) Postrelease control was also imposed. The defense's objection to the Reagan Tokes Law's indefinite sentencing structure was also noted for the record.

## II. Consecutive Sentences

{¶ 12} Curry argues the record does not support that consecutive sentences were appropriate. More specifically, Curry argues that the trial court failed to make the consecutive-sentence findings required by R.C. 2929.14(C)(4). Instead, the trial court "only engaged in a talismanic incantation of the code by stating on the record that '[i]t was necessary to punish, to protect the public from future, crime, and are not disproportionate to the conduct or danger posed here by the defendant.'" Appellant's brief, p. 10, quoting tr. 54.

{¶ 13} We review felony sentences under the standard set forth in R.C. 2953.08(G)(2). *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 16.

> R.C. 2953.08(G)(2) provides that when reviewing felony sentences, a reviewing court may overturn the imposition of consecutive sentences where the court "clearly and convincingly" finds that (1) "the record does not support the sentencing court's findings under R.C. 2929.14(C)(4)," or (2) "the sentence is otherwise contrary to law."

*State v. Henderson*, 8th Dist. Cuyahoga Nos. 106340 and 107334, 2018-Ohio-3168, ¶ 15.

{¶ 14} However, we must first address whether the lack of consecutive-sentence findings renders the sentence unauthorized by law under R.C. 2953.08(D)(1) for the purposes of appellate review. *State v. Coleman*, 8th Dist. Cuyahoga No. 111332, 2022-Ohio-4013, ¶ 18.

**{¶ 15}** R.C. 2953.08(D)(1) states:

A sentence imposed upon a defendant is not subject to review under this section if the sentence is authorized by law, has been recommended jointly by the defendant and the prosecution in the case, and is imposed by a sentencing judge.

**{¶ 16}** "[A] trial court's imposition of nonmandatory consecutive sentences within an agreed sentencing range is a jointly recommended sentence that is authorized by law and not reviewable on appeal under R.C. 2953.08(D)(1)." *State v. Grant*, 2018-Ohio-1759, 111 N.E.3d 791, ¶ 29 (8th Dist.). "[I]t does not matter if the jointly recommended sentence is a range or a specific term, as long as the sentence is authorized by law, the sentence is not reviewable." *Id*. at ¶ 19, citing R.C. 2953.08(D)(1). Thus, it is also true that "[i]n the context of a jointly recommended sentence that includes nonmandatory consecutive sentences, a trial court is not required to make the consecutive sentence findings under R.C. 2929.14(C)(4) or include those in the sentencing entry." *State v. Coleman*, 8th Dist. Cuyahoga No. 111332, 2022-Ohio-4013, ¶ 19, citing *State v. Sergent*, 148 Ohio St.3d 94, 2016-Ohio-2696, 69 N.E.3d 627, ¶ 43.

**{¶ 17}** The alleged failure of the trial court to make the consecutive-sentence findings under R.C. 2929.14(C)(4) is not subject to review on appeal pursuant to R.C. 2953.08(D)(1). Therefore, we find that Curry's sentence is not subject to review and the first assigned error is overruled.

### III. Reagan Tokes Law

**{¶ 18}** Curry's second and final assignment of error is that

[a]ppellant's indefinite sentence imposed under the Reagan Tokes sentencing scheme violates appellant's rights under the United States Constitution applied to the State of Ohio through the Fourteenth Amendment and the Ohio Constitution as it denies appellant due process of law; violates the Sixth Amendment right to a jury trial; violates the separation of powers doctrine; does not provide fair warning of the dictates of the statute to ordinary citizens; and the statute conferred too much authority to the Ohio Department of Rehabilitation and Correction ("ODRC").

{¶ 19} Curry cites this court's holdings in *State v. Delvallie*, 2021-Ohio-1809, 173 N.E.3d 544 (8th Dist.), *State v. Daniel*, 2021-Ohio-1963, 173 N.E.3d 184 (8th Dist.), and *State v. Sealey*, 2021-Ohio-1949, 173 N.E.3d 894 (8th Dist.), finding the Reagan Tokes Law to be unconstitutional under the grounds cited by Curry. Curry also acknowledges that this court's court's en banc holding in *State v. Delvallie*, 8th Dist. Cuyahoga No. 109315, 2022-Ohio-470, overruled the prior holdings. In light of the pending cases before the Ohio Supreme Court on the constitutionality of the Reagan Tokes Law in *State v. Hacker*, Case No. 2020-1496 and *State v. Simmons*, Case No. 2021-0532, Curry has made and preserved his challenges to the law.

{¶ 20} The second assignment of error is also overruled.

## IV. Conclusion

{¶ 21} The trial court's judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's

conviction having been affirmed, any bail pending is terminated.  Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, ADMINISTRATIVE JUDGE

EILEEN A. GALLAGHER, J., and
EILEEN T. GALLAGHER, J., CONCUR


N.B.  Administrative Judge Anita Laster Mays is constrained to apply *Delvallie's* en banc decision.  For a full explanation of her analysis, *see State v. Delvallie*, 2022-Ohio-470, 185 N.E.3d 536 (8th Dist.) (Laster Mays, J., concurring in part and dissenting in part).

Judge Eileen T. Gallagher joined the dissent by Judge Lisa B. Forbes in *Delvallie* and would have found that R.C. 2967.271(C) and (D) of the Reagan Tokes Law are unconstitutional.